# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0981-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

Y.S.,

    Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF F.S.,

    a Minor.

_____

Submitted October 3, 2019 – Decided October 23, 2019

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0063-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Anastasia P. Winslow, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Peter Damian Alvino, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant Y.S. appeals from a September 11, 2018 order terminating her parental rights to her son, F.S. (Flynn).[1] Defendant contends that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. We affirm, substantially for the reasons set forth in Judge William R. DeLorenzo's comprehensive and thoughtful decision.

We will not recite in detail the history of the Division's involvement with Flynn and his mother. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge DeLorenzo's decision. We add the following comments.

---

[1] We refer to the defendant by initials and to the child by a fictitious name, to protect their privacy. R. 1:38-3(d)(12).

The Division became involved with Y.S. in April 2016, after receiving a referral from a resident at a shelter where Y.S. was staying. Flynn was thirteen days old at the time. The shelter resident complained that Y.S. was not feeding or bathing the baby properly. A Division worker met with Y.S. and Flynn after the referral. The record reflects that during the meeting, the worker saw Y.S. holding Flynn awkwardly, thus constricting his breathing. Additionally, the worker noticed Y.S. did not support Flynn's head while he was nursing. Still, the Division determined Flynn was safe and left the case open for services.

Shortly after the initial referral, the Division received another call from staff at the same shelter, raising additional concerns. The caller reported Y.S. was not feeding Flynn properly, sleeping in the same bed as Flynn, even though she had been told this placed the baby at risk, and improperly dressing the infant, despite cold temperatures in the early spring.

The Division placed a homemaker at the shelter three days a week to assist Y.S. and also recommended that she submit to a psychological evaluation with Dr. Ada Liberant, a Russian-speaking therapist. After Dr. Liberant observed Y.S. with Flynn, she recommended that Y.S. engage in trauma-focused therapy, mother/infant therapy, psychiatric therapy, and enroll in mentoring and parenting classes.

A-0981-18T2

The Division also learned Y.S. was a victim of human trafficking after she immigrated to the United States from Russia. Therefore, it referred Y.S. to an agency that could help her address issues arising from such abuse. More than a year after this referral, Y.S. had not availed herself of this agency's services.

By the end of May 2016, the Division moved for temporary custody of Flynn, due to its ongoing concerns about Y.S.'s mental health and inadequate parenting. According to the caseworker's testimony at trial:

> [e]ven though several . . . services were implemented, they did not alleviate the neglect concerns that were going on. And, [Y.S] either did not follow direction or she refused services. She was not waking up at night to tend to [Flynn] when he would cry . . . . There were concerns for . . . [Y.S.'s] mental health and poor hygiene.

The court granted the Division's custody application and ordered Y.S. to submit to a psychiatric evaluation, an updated psychological evaluation, and to attend parenting classes. The court further ordered the Division to explore potential shelter programs for Y.S. which could provide services and twenty-four hour supervision. Flynn was placed with resource parents at that time and remained with his resource parents throughout the proceeding. Y.S. was permitted two hours per week of supervised visits with Flynn, but she did not consistently attend these visits.

A-0981-18T2

By order of June 14, 2016, the court continued Flynn in the Division's temporary custody, but ordered the Division to provide Y.S. with bus passes and housing assistance. When the court reviewed this matter a few months later, it found Flynn still required the Division's care and supervision. The judge concluded Y.S. was not able to adequately care for him, as "[t]here [were] concerns regarding the mother's inability to provide safe infant care and supervision [and] therefore [she] require[d] parenting skills and therapeutic supervised visitation and services from the Division."

In May 2017, the court held a permanency hearing, at which time it approved the Division's permanent plan of termination of parental rights, followed by adoption. The court found it was unsafe for Flynn to be in his mother's care for the foreseeable future and that Y.S. was "resistant to participating in therapy [and had] not attended visitation consistently."

In June 2017, the Division filed a complaint for guardianship, seeking the termination of Y.S.'s parental rights. At that time, Y.S. was granted weekly visits with Flynn, and ordered to attend psychological and bonding evaluations and to continue to participate in services. Y.S. refused to attend the bonding evaluation, even though it was rescheduled multiple times to secure her compliance. Flynn's resource parents did attend a bonding evaluation and after

5

their evaluation was completed, the Division determined that removing Flynn from their care would cause Flynn harm.

The record reflects that from August 3, 2017 until December 7, 2017, Y.S. chose not to visit Flynn. The caseworker reported that in late December 2017, when Y.S did visit the child, she ignored her son when he cried and did not ask about Flynn's development or health. Flynn purportedly was distressed and clung to the caseworker during that visit. The Division remained concerned that when Y.S. did exercise parenting time, she was not properly feeding or holding Flynn and she misread his expressions.

A guardianship trial was held before Judge DeLorenzo on April 9 and 24, 2018. Y.S. testified on her own behalf. The Division called only one witness, a caseworker. The caseworker testified the Division supported a plan for Flynn to be adopted by his resource parents because Y.S. remained incapable of caring for Flynn independently. The caseworker confirmed Y.S. had not addressed her mental health issues, refused to attend services, failed to visit Flynn consistently, and that attempts by the Division and Y.S. to secure a home for Flynn with any of Y.S.'s relatives in Russia had been unsuccessful. Additionally, the caseworker affirmed that Flynn's resource parents had provided Flynn with a loving and supportive home, that Flynn called them "mommy" and "daddy" and

A-0981-18T2

he was thriving with them. The resource parents expressed a desire to adopt Flynn.

On September 11, 2018, the court terminated Y.S.'s parental rights, as well as the parental rights of Flynn's unknown biological father.[2] In his extensive opinion, Judge DeLorenzo concluded that (1) the Division had proven all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and (2) termination of defendant's parental rights was in Flynn's best interests. Judge DeLorenzo awarded guardianship of Flynn to the Division, permitting the Division to consent to the child's adoption.

Throughout his opinion, Judge DeLorenzo addressed the evidence and evaluated the credibility of Y.S. and the Division caseworker. While he found the caseworker's testimony credible and the exhibits provided by the Division to be reliable, he found Y.S.'s testimony neither credible nor reasonable. Judge DeLorenzo also noted Flynn's Law Guardian supported termination of Y.S.'s parental rights.

---

[2] Neither the Division nor Y.S. could positively identify Flynn's father. A paternity test of one man named by Y.S. ruled out that person, and other putative fathers named by Y.S. could not be found by the Division, despite its efforts.

A-0981-18T2

Judge DeLorenzo did not rely on any expert reports in arriving at his decision. He explained the Division was unable to advance any expert opinion at trial because Y.S. refused to attend psychological or bonding assessments.

Our review of the trial judge's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by his factual findings as long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). The trial court's factual findings should be upheld unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412.

Applying these principles, we conclude Judge DeLorenzo's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We therefore affirm substantially for the reasons the judge expressed in his thorough opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION